**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| J.R., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>POSITIVE CHANGE ACADEMY, et al.,<br><br>Defendants. | Civil Action No. 25-474-GBW |

Caitlin Elizabeth McAndrews, MCANDREWS LAW OFFICES, P.C., Wilmington, DE.

*Counsel for Plaintiffs J.R. and M.R.*

Ashley C. Azato, Michele D. Allen, ALLEN & ASSOCIATES, Wilmington, DE.

*Counsel for Defendants Positive Change Academy and Transforming Lives, Inc.*

Joseph E. Brenner, Michael C. Heyden, Jr., GORDON REES SCULLY MANSUKHANI LLP, Wilmington, DE.

*Counsel for Defendant Gateway Charter School*

**MEMORANDUM OPINION**

August 18, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court are two Motions to Dismiss. The first Motion was filed by Defendants Transforming Lives, Inc. ("TLI") and Positive Change Academy ("PCA"). D.I. 13 ("PCA and TLI's Motion"). The second Motion was filed by Defendant Gateway Charter School ("Gateway"). D.I. 16 ("Gateway's Motion"). Both Motions have been fully briefed. D.I. 14; D.I. 17; D.I. 22; D.I. 23; D.I. 24; D.I. 25. For the following reasons, the Court grants both Motions.

## I. BACKGROUND

The following are factual allegations from Plaintiffs' Amended Complaint (D.I. 12) that are taken as true for the purpose of resolving both Motions.

Plaintiff J.R. ("J.R.") has a history of "hospitalization for behavioral needs, including an admission to Terry Children's Psychiatric Center in his kindergarten year (2016-17 school year)." D.I. 12 ¶ 59. J.R. attended Gateway Charter School at the start of the 2022-23 school year. *Id.* ¶ 63. During this time, J.R. "struggled more than usual with impulsive and hyperactive behaviors" and "received multiple behavior referrals." *Id.* ¶¶ 65-66. "In March of 2023, the Charter School convened a Manifestation Determination Review, to discuss whether J.R.'s behavior was a manifestation of his disability." *Id.* ¶ 71. Determining that J.R.'s behavior was a manifestation of his disability, members of the team advised J.R.'s mother, Plaintiff M.R. ("M.R.") (together with J.R., "Plaintiffs"), that "J.R. required a therapeutic setting." *Id.* ¶ 72. "The Charter School recommended Positive Change Academy as such a setting" (*id.* ¶ 73), after which "J.R. began attending PCA in April of 2023" (*id.* ¶ 76).

On April 20, 2023, "J.R. was playing a card game (UNO) with a group of students when J.R. and the other student began arguing and pushing and shoving one another." *Id.* ¶ 79. Then, Defendant Joshua Brown ("Brown") "grabbed J.R. from behind and slammed him to the ground."

*Id.* ¶ 80. J.R. lost consciousness. *Id.* ¶ 81. PCA staff "carried [J.R.] to the nurse's office" where J.R. "regained consciousness, but did not remember anything that occurred immediately prior." *Id.* ¶ 82. J.R. was "diagnosed with probable concussion," "presented with an abrasion on his right cheek," and was diagnosed with "intracranial hemorrhage, spinal injury secondary to blunt trauma, closed head injury/concussion, and other musculoskeletal injury secondary to blunt trauma/fall." *Id.* ¶ 3. "As a result of the assault, J.R. has suffered significant physical, emotional, mental, cognitive, and educational harm." *Id.* ¶ 7. This includes "a possible diagnosis of post-traumatic stress disorder." *Id.*

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). When considering a facial attack, the court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in the plaintiff's favor. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). When reviewing a factual attack, the court may weigh and consider evidence outside the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

### B. Motion to Dismiss Under Rule 12(b)(6)

"To state a viable claim, a plaintiff must offer a short and plain statement showing that he is entitled to relief, including 'allegations plausibly suggesting (not merely consistent with)' such entitlement." *Bah v. United States*, 91 F.4th 116, 119 (3d Cir. 2024) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 557 (2007)). A complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must set forth enough facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A]t the motion-to-dismiss stage, the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678-79). "In ruling on a motion to dismiss," a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[t]he primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether they are entitled to offer evidence to establish the facts alleged in the complaint." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023). In other words, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

## III. DISCUSSION

### A. The Court Has Subject Matter Jurisdiction Over Counts I and II of Plaintiffs' Amended Complaint

First, the Court addresses the threshold issue of subject matter jurisdiction, which was raised in both Motions with respect to Count I (Discrimination and Denial of Benefits Under Section 504) and Count II (Discrimination and Denial of Benefits Under the ADA). *See generally* D.I. 14; D.I. 17; D.I. 12 at 19-23. The instant jurisdictional challenge arises from the requirement

codified in the Individuals with Disabilities Education Act ("IDEA") to provide eligible children with a Free and Appropriate Public Education ("FAPE"). The IDEA "sets forth a number of administrative procedures for children, their parents, teachers, and school districts to follow when disputes arise." *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 144 (2023). Section 1415(*l*) of the IDEA requires individuals to exhaust administrative procedures (as laid out in subsections (f) and (g) of the IDEA) before seeking relief in a civil lawsuit for the denial of a FAPE. 20 U.S.C. § 1415(*l*); *see also Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 165 (2017). In *Fry v. Napoleon Community Schools*, the Supreme Court held that § 1415(*l*)'s exhaustion requirement applies only to suits that "seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" 580 U.S. at 165. However, while § 1415(*l*)'s exhaustion requirement applies to claims seeking relief for the denial of a FAPE broadly, § 1415(*l*) does not require plaintiffs to exhaust administrative processes for suits premised on the past denial of a FAPE "if the remedy a plaintiff seeks is not one [the] IDEA provides." *Perez*, 598 U.S. at 150. Importantly, equitable relief is an available remedy under the IDEA, but compensatory damages are not available. *Id.* at 148, 150. Thus, "a plaintiff who files an ADA action seeking both damages and the sort of equitable relief [the] IDEA provides may find his request for *equitable relief* barred or deferred if he has yet to exhaust § 1415(f) and (g)." *Id.* at 150 (emphasis added). The plaintiff's request for damages, however, would still proceed absent exhaustion of administrative remedies.

To determine if the Court lacks subject matter jurisdiction over this action, the Court first asks if Plaintiffs seek relief for the denial of a FAPE. In deciding this, "a court should look to the substance, or gravamen, of the plaintiff's complaint." *Fry*, 580 U.S. at 165. Courts consider whether the plaintiff could have "brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school," and whether "an adult at the school [could]

have pressed essentially the same grievance." *Id.* at 171. Courts also consider the "history of the proceedings," because "[p]rior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE." *Id.* at 173-74.

Defendants assert that Counts I and II seek relief for the denial of a FAPE because the Amended Complaint recites failures to "'provide [J.R.] with a safe, appropriate, and properly supervised educational program where he would be free from harm' because of his disability." D.I. 14 at 5 (citing D.I. 12 ¶¶ 126, 141); *see also* D.I. 17 at 5. Plaintiffs respond that the present action "is not a mere denial of FAPE claim under [the] IDEA; indeed, there is no claim under [the] IDEA in the Amended Complaint. [The] IDEA cannot grant the Plaintiff J.R. the relief he is due. The Plaintiffs are not seeking mere compensatory education that they can use for tutoring, books, or educational expenses. The Plaintiffs are seeking and are entitled to money damages for this abuse." D.I. 22 at 9. In other words, Plaintiffs assert that this action sounds in personal injury, civil rights, and tort. *Id.*

The Court agrees with Defendants that Counts I and II recite the denial of a FAPE, even though the Amended Complaint does not explicitly recite a claim under the IDEA. Counts I and II discuss Defendants' failure to "ensure that [J.R.'s] educational program was safe, appropriate, and properly supervised with properly hired, trained and supervised staff" and to "ensure that [J.R.'s] education was free of abuse at school and that he was not subjected to a hostile educational environment." D.I. 12 ¶¶ 127, 143. These allegations revolve around J.R.'s education, and thus could neither be brought (1) against a public facility that is not a school, nor (2) by an adult at the school. *See Fry*, 580 U.S. at 156. The Court's conclusion is further bolstered by the history of the

proceedings, which reveals that Plaintiffs and Gateway entered into a settlement agreement releasing Gateway of claims pertaining to the provision of a FAPE. D.I. 23-3, Ex. 3, ¶ 3(a).

Having decided that Counts I and II recite the denial of a FAPE, the Court next turns to whether the remedy sought is of the type the IDEA provides (i.e., equitable relief). At this juncture, Defendants' arguments fail. Counts I and II seek relief in the form of "compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interests, costs and such other and further relief as this Court deems just and proper." D.I. 12 at 21, 23. The Supreme Court made clear in *Perez* that compensatory damages are "a form of relief everyone agrees [the] IDEA does not provide." 598 U.S. at 148. Since Plaintiffs seek compensatory damages, Plaintiffs were not required to exhaust the administrative procedures set forth in § 1415(f) and (g).

For the above reasons, the Court finds that it has subject matter jurisdiction over Counts I and II of Plaintiffs' Amended Complaint.

### B. The Court Grants Defendants PCA and TLI's Motion to Dismiss Plaintiffs' Amended Complaint

#### 1. Plaintiffs Fail to State a Claim Against Defendants PCA and TLI Under Section 504 of the Rehabilitation Act or Title II of the Americans with Disabilities Act (Counts I & II)

To state a claim under Section 504 of the Rehabilitation Act ("RA"), 42 U.S.C. § 794, or Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132,[1] Plaintiffs must demonstrate that J.R. "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of h[is] disability." *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*,

[1] The Court analyzes the claims brought under the RA and ADA together because "the substantive standards for determining liability are the same." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019) (quoting *McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995)).

587 F.3d 176, 189 (3d Cir. 2009). With respect to the third prong, Plaintiffs must establish causation. The RA requires the disability to be "the sole cause of the discriminatory action, while the ADA only requires but-for causation." *Furgess*, 933 F.3d at 291 n.25.

PCA and TLI contend that Plaintiffs fail to plausibly allege that any discrimination that J.R. faced was because of his disability. D.I. 14 at 7. Specifically, the RA and ADA violations that Plaintiffs describe "arise from *one incident* where J.R. was unfortunately injured by Defendant Brown." *Id.* (emphasis in original). In PCA and TLI's view, this singular incident is not enough to conclude that J.R. suffered discrimination from TLI and PCA because of J.R.'s disability. *See id.* Further, PCA and TLI contend that Plaintiffs provide no factual basis or support for their threadbare allegations that PCA and TLI, *inter alia*, (1) could not appropriately address the needs related to J.R.'s disability, (2) did not properly hire, train, and/or supervise J.R.'s teachers, and (3) were on notice of Defendant Brown's allegedly discriminatory behavior. *Id.*

The Court agrees with PCA and TLI. Plaintiffs have offered only conclusory allegations that PCA and TLI violated the RA and ADA. For instance, Plaintiffs allege the following: (1) "Defendants assaulted J.R. because they could not appropriately address the needs related to his disability" (D.I. 12 ¶ 90); (2) "Defendants did not properly hire, train, and/or supervise J.R.'s teachers, aide, and/or paraprofessionals to prevent abuse by employees or agents" (*id.* ¶ 93); (3) "Defendants had policies and procedures in place concerning . . . the discipline of the children with and without disabilities" but "failed to implement or enforce these policies or procedures, and to ensure that these policies were sufficiently comprehensive and adequate" (*id.* ¶ 105); and (4) "Defendants tacitly approved or deliberately ignored the abuse of J.R., such that their actions and inaction can be said to be a custom or practice of participation in and/or deliberate indifference to abuse" (*id.* ¶ 110). The Court is unable to glean how, based only on one very unfortunate incident

of assault by Defendant Brown, it can reasonably infer that PCA and TLI have a "custom or practice" of participation in abuse, that PCA and TLI did not properly hire or train Defendant Brown, or that PCA and TLI assaulted J.R. because of his disability, absent any factual support for these allegations. Plaintiffs need not plead detailed facts, but a complaint requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Here, Plaintiffs have not provided any factual support for their ADA and RA claims. Instead, Plaintiffs have merely recited legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. For instance, Plaintiffs' Amended Complaint is devoid of any factual support alleging discrimination because of J.R.'s disability. *See* D.I. 12. Plaintiffs also fail to plead any reason or factual support of why Defendants should have been on notice of Defendant Brown's alleged discriminatory behavior prior to the incident in order to have prevented it. *See id.* Plaintiffs also failed to plead any factual support for causation under the RA and/or the ADA, and Plaintiffs failed to plead any factual basis to establish J.R.'s disability and the alleged failure to provide a safe and appropriate education. *See id.* In fact, Plaintiffs do not even mention in the Amended Complaint whether PCA/TLI provided education to non-disabled students or allege that any non-disabled students that PCA/TLI were servicing at the pertinent time were treated more favorably. *See id.*

For these reasons, the Court dismisses Counts I and II of Plaintiffs' Amended Complaint with respect to PCA and TLI without prejudice.[2]

---

[2] The parties briefed an additional related issue, which is that compensatory damages under the RA and ADA further "require a finding of intentional discrimination." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013). Since the Court already resolved Defendants' Motion with respect to Counts I and II in favor of Defendants on other grounds, the Court will not address the issue of intentional discrimination at this time.

### 2. Plaintiffs Fail to State a Claim as a Matter of Law Against Defendants PCA and TLI Under 42 U.S.C. § 1983 (Counts III-VI)

PCA and TLI next argue that they are not state actors within the meaning of 42 U.S.C. § 1983 and, thus, Counts IV-IX of Plaintiffs' Amended Complaint fail as a matter of law. D.I. 14 at 11-12. For a private party to be considered a state actor for purposes of § 1983, there must be "such a close nexus between the State and *the challenged action* that seemingly private behavior may be fairly treated as that of the state itself." *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (emphasis in original) (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)). "In other words, the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). For this analysis, courts consider "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.* (quoting *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)).

In this action, Plaintiffs argue that PCA and TLI are state actors on two grounds. *First*, Plaintiffs assert that PCA and TLI exercised powers that are traditionally the exclusive prerogative of the State by "us[ing] PCA as the exclusive mechanism" to deliver a FAPE to J.R. under the IDEA, the RA, and the ADA. D.I. 22 at 19. The Court disagrees. In *Rendell-Baker v. Kohn*, the Supreme Court noted that, while "the education of maladjusted . . . students is a public function," that does not make it "the exclusive province of the State." 457 U.S. 830, 842 (1982). In fact, the Supreme Court noted in 1982 that "until recently the State had not undertaken to provide education for students who could not be served by traditional public schools." *Id.* Although *Rendell-Baker* did not specifically concern the statutes at issue in the instant litigation, its holding is nevertheless

squarely applicable to the question of whether educating students with disabilities is the exclusive province of the state. Thus, the Court finds that delivering a FAPE to J.R. does not constitute a power that is traditionally the exclusive prerogative of the State.

*Second*, Plaintiffs assert that PCA and TLI "acted in concert with the State." D.I. 22 at 18. Plaintiffs' rationale is that, since PCA and TLI are contractors for the State and provide services for the State, they are agents and instrumentalities of the State. *Id.* at 20. The Court disagrees with Plaintiffs' assertion. The State's only role is that it funds PCA and TLI and regulates them through the IDEA. Plaintiffs have not made any allegations that PCA and/or TLI are charter schools or that the State is otherwise involved in PCA and TLI. A "school's receipt of public funds does not make its decisions acts of the State." 457 U.S. at 840 (cleaned up). Nor does extensive government regulation convert a private actor into a state actor. *Blum*, 457 U.S. at 1004.

For these reasons, the Court finds that PCA and TLI are not state actors within the meaning of 42 U.S.C. § 1983, and dismisses with prejudice Counts III-VI of Plaintiffs' Amended Complaint with respect to PCA and TLI.

**3. Plaintiffs Fail to State a Negligence Claim Against Defendants PCA and TLI (Counts VII-IX)**

PCA and TLI initially contend that Plaintiffs' Amended Complaint, and specifically the tort claims recited in Counts VII and VIII, is a shotgun pleading in violation of Fed. R. Civ. P. 8(a)(2) because it "fails to give [PCA and TLI] adequate notice of the claims brought against them and the grounds upon which each claim rests." D.I. 14 at 16. Plaintiffs respond that the Amended Complaint "easily places [PCA and TLI] on notice of the underlying facts and the claims at issue." D.I. 22 at 21.

The Court agrees with Plaintiffs with respect to their initial contention. Dismissal under Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous,

vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Peay v. Sager*, 801 F. App'x 66, 68 (3d Cir. 2020) (quoting *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004)). In this action, the substance of Plaintiffs' claims is clear. The Amended Complaint revolves around an alleged assault committed by Defendant Brown. PCA and TLI are on notice of the allegations that pertain to them, which are arguably described in sufficient detail throughout the Amended Complaint. This includes, *inter alia*, failure to implement appropriate oversight and supervision (D.I. 12 ¶ 102), failure to adequately train employees and agents (*id.* ¶ 104), failure to implement or enforce policies and procedures regarding the discipline of children with disabilities (*id.* ¶ 105), and failure to provide J.R. with a safe educational environment (*id.* ¶ 126). Although whether these allegations are conclusory is a separate question under Fed. R. Civ. P. 12(b)(6), which the Court will analyze, the Court cannot conclude that the substance of Plaintiffs' Amended Complaint is vague or confused in violation of Rule 8.

Next, PCA and TLI contend that Plaintiffs fail to state their tort claims in Counts VII through IX under Federal Rule of Civil Procedure 12(b)(6). D.I. 14 at 17-18. Specifically, PCA and TLI assert that Plaintiffs' tort claims are "nothing more than a formulaic recitation of the elements of a negligence cause of action, which is insufficient" under the pleading standard set forth in *Twombly*. D.I. 14 at 17-18. The Court agrees. Plaintiffs have not alleged any facts to support their threadbare allegations that PCA and TLI: (a) "[f]ailed to properly screen and hire and then properly train staff;" (b) "[f]ailed to properly supervise teachers, aides, and paraprofessionals;" (c) "[f]ailed to adequately protect Plaintiff;" (d) "[f]ailed to continually monitor overall safety of pupils;" (e) "[f]ailed to adopt, maintain and/or execute a competent discipline plan to protect students from employees and staff;" or (f) "[f]ailed to institute appropriate policies to adequately monitor and report employee and/or staff misbehavior." D.I. 12

¶ 109. Rather, Plaintiffs have merely recited legal conclusions and the elements of a negligence claim. As the Court explained *supra* with respect to Plaintiffs' ADA and RA claims, Plaintiffs need not plead detailed factual allegations to survive a motion to dismiss on its state law tort claims, but a complaint requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

For these reasons, the Court dismisses Counts VII and VIII with respect to PCA and TLI without prejudice. Since Count IX is a derivative loss of consortium claim, it "must rise or fall" with the underlying tort claim. *Banks v. Int'l Rental & Leasing Corp.*, 680 F.3d 296, 300 n.6 (3d Cir. 2012). Therefore, the Court also dismisses Count IX with respect to PCA and TLI without prejudice.

**C. The Court Grants Defendant Gateway's Motion to Dismiss Plaintiffs' Amended Complaint**

**1. Plaintiffs Fail to State a Claim Against Defendant Gateway Under Section 504 of the Rehabilitation Act or Title II of the Americans with Disabilities Act (Counts I & II)**

Gateway contends that Plaintiffs fail to state a claim under the RA and ADA because "one altercation with Brown" is insufficient to stand for "a violation of the ADA or Section 504." D.I. 17 at 6. The Court agrees for the same reasons detailed *supra* Section II.B.1 with respect to PCA and TLI. Thus, the Court dismisses Counts I and II of Plaintiffs' Amended Complaint with respect to Gateway without prejudice.

**2. Plaintiffs Fail to State a Claim Against Defendant Gateway Under 42 U.S.C. § 1983 (Counts III-VI)**

**a. Gateway Is a State Actor**

Gateway argues that it is not a state actor for purposes of § 1983. D.I. 17 at 7. Plaintiffs respond that Gateway is a state actor because it is a charter school, which is created by the State and is "considered a public school for all purposes" in Delaware. D.I. 23 at 17 (quoting 14 Del.

C. § 504(c)). As such, a charter school "may . . . be sued to the same extent and on the same conditions as a public school district . . . ." *Id.* § 504(d). The Court agrees with Plaintiffs. Just as public schools are treated as state actors for purposes of § 1983, so too is a charter school. *See Wooleyhan v. Cape Henlopen Sch. Dist.*, C.A. No. 10-153, 2011 WL 4048976, at *3 (D. Del. Sep. 12, 2011) ("Municipal subdivisions, such as school districts, are considered state actors for the purposes of § 1983."); *Reach Acad. for Boys & Girls, Inc. v. Delaware Dep't of Educ.*, 46 F. Supp. 3d 455 (D. Del. 2014) ("Delaware law unambiguously provides that the legal status of a charter school is equivalent to that of a public school district."). Thus, Gateway is a state actor for purposes of 42 U.S.C. § 1983.

**b. Plaintiffs Have Not Plausibly Alleged Gateway's Liability Under *Monell* (Counts IV-VI)**

A § 1983 claim against a charter school can proceed in two ways under *Monell v. Department of Social Services of City of New York* and its progeny. *First*, the school may be sued if the "execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible [for] under § 1983." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (alteration in original) (quoting *Monell*, 436 U.S. at 690). *Second*, "in the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir.

1997). Such a claim is only actionable "where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employee] come[s] into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* In assessing this, courts consider whether the "training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id.* at 390.

Plaintiffs' Amended Complaint fails to state a claim under either theory. *First*, the Court agrees with Gateway that Plaintiffs' Amended Complaint fails to allege any "policy or custom attributable to Gateway" based on "one isolated incident in which a Positive Change and/or Pass Educators employee is alleged to have been involved in an altercation with a student." D.I. 17 at 8. Plaintiffs have pled zero facts suggesting that Gateway has any policy or custom at all that would have led to J.R.'s injury, much less one that is "'so permanent and well settled' as to virtually constitute law." *Andrews*, 895 F.2d at 1480. *Second*, the Court agrees with Gateway that Plaintiffs have only alleged "vague, general deficiencies of Defendants' failure to train its employees." D.I. 25 at 5. Plaintiffs have made zero allegations regarding the adequacy of any training program implemented by Gateway, nor have Plaintiffs pled facts alleging a history of Gateway's employees mishandling children. *Cf. Bonham v. Bobersky*, No. 3:19-CV-0709, 2019 WL 5963171, at *6-7 (M.D. Pa. Nov. 13, 2019) (denying a motion to dismiss where employees had a history of mishandling children that suffered from emotional disorders). Rather, Plaintiffs offer only conclusory allegations of a failure to train, which center around one incident involving the assault of J.R. by one employee. "That a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the [employee's] shortcomings may have

resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91. Thus, Plaintiff has not plausibly stated a § 1983 claim of liability under *Monell* and *City of Canton*.

For the above reasons, the Court dismisses Counts IV-VI of Plaintiffs' Amended Complaint with respect to Gateway without prejudice.

**c. Plaintiffs' Claim for Enforcement of the ADA Fails as a Matter of Law (Count III)**

Count III of Plaintiffs' Amended Complaint seeks enforcement of the ADA via § 1983. Gateway argues that, because the ADA provides "a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983,' it may be inferred that Congress did not intend that Section 1983 be available to enforce rights under that statute." D.I. 17 at 9 (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)). The Court agrees with Gateway. In *A.W. v. Jersey City Public Schools*, the Third Circuit held that "§ 1983 is not available to provide a remedy for [a defendant's] alleged violation of [a plaintiff's] rights under Section 504 [of the RA]." 486 F.3d 791, 806 (3d Cir. 2007). The court in *A.W.* noted that, generally, "when a private, judicial remedy is available for alleged statutory violations, this remedy is intended to be exclusive." *Id.* at 805. This Court sees no reason that the holding in *A.W.* would not apply with equal force to claims under the ADA, which provides the same remedies as Section 504. *See Jeremy H. by Hunter v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 279 (3d Cir. 1996) (comparing Section 504 claims to ADA claims); *Centennial Sch. Dist. v. S.D. ex rel. Daniel*, No. 10-CV-4129, 2011 WL 2441297, at *5 (E.D. Pa. June 17, 2011) ("The ADA provides that its 'remedies, procedures, and rights' are the same as those available under § 504."). Indeed, Gateway points out that at least one other court in this district has found that "Section 1983 is incompatible with Title II of the ADA." *Zicherman v. Univ. of Delaware*, C.A. No. 24-162-RGA, 2025 WL 71978, at *6 (D. Del. Jan. 10, 2025). To hold otherwise would "allow[] § 1983 to thwart [the ADA's] enforcement scheme." *Id.*

This Court agrees with the decision in *Zicherman* and, thus, finds that Plaintiffs' claim for enforcement of the ADA under § 1983 fails as a matter of law.

For the above reasons, the Court dismisses Count III of Plaintiffs' Amended Complaint with respect to Gateway with prejudice.

#### 3. Plaintiffs Fail to State a Negligence Claim Against Defendant Gateway (Counts VII-IX)

Gateway contends that Plaintiffs fail to state a plausible tort claim. D.I. 17 at 6. The Court agrees for the same reasons detailed *supra* Section II.B.3 with respect to PCA and TLI. Thus, the Court dismisses Counts VII-IX of Plaintiffs' Amended Complaint with respect to Gateway without prejudice.

## IV. CONCLUSION

For all the foregoing reasons, Defendants Transforming Lives, Inc. and Positive Change Academy's Motion (D.I. 13) is GRANTED WITHOUT PREJUDICE as to Counts I, II, VII, VII, and IX of Plaintiff's Amended Complaint and GRANTED WITH PREJUDICE as to Counts III through VI of Plaintiff's Amended Complaint. Defendant Gateway Charter School's Motion (D.I. 16) is GRANTED WITHOUT PREJUDICE as to Counts I, II, IV, V, VI, VII, VIII, and IX of Plaintiff's Amended Complaint and GRANTED WITH PREJUDICE as to Count III of Plaintiff's Amended Complaint. The Court will issue an Order consistent with Memorandum Opinion.